# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| COURTNEY DIANA, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>HORIZON HEALTHCARE SERVICES, INC., d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, a New Jersey corporation,<br><br>               Defendant. | No. 2:13-CV-07418-CCC-MF |
| KAREN PEKELNEY, MARK MEISEL, and MITCHELL RINDNER, on behalf of themselves and all others similarly situated<br><br>               Plaintiff,<br><br>    v.<br><br>HORIZON HEALTHCARE SERVICES, INC., d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, a New Jersey corporation,<br><br>               Defendant. | No. 2:14-cv-00584-CCC-MF |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT HORIZON HEALTHCARE SERVICES, INC.'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...........................................................1

II.  FACTUAL BACKGROUND ..............................................................3

III. LEGAL ARGUMENT ......................................................................5

    A.   Tata's Standard Deputation Agreements ...................................7

        1.   Plaintiffs' Past and Future Harms Satisfy Injury-in-Fact.........................................................................................7

            a.   Concrete, Particularized, and Actual Harm: *Past* Harm ........................................................................8

                i.   Economic Injury.........................................8

                ii.  Violation of Common Law and Statutory Rights .........................................9

                iii. Rindner Suffered Actual Harm .................11

            b.   Concrete, Particularized, and Imminent Harm:  *Future* Harm................................................11

        2.   Rindner's Identity Theft is Fairly Traceable to the Data Breach ...................................................................16

    B.   Plaintiffs State Claims Under Federal and State Law .............18

        1.   Plaintiffs State Claims Under FCRA............................18

            a.   Horizon Is a Consumer Reporting Agency under FCRA .......................................................20

            b.   Horizon's Inadequate Data Security Procedures Violated FCRA...................................23

            c.   Horizon Violated FCRA by Failing to Protect Medical Information ...............................24

**TABLE OF CONTENTS**
**(cont.)**

Page

2.   Plaintiffs State Claims Under the New Jersey CFA.......27

    a.   Plaintiffs State Claims For Misrepresentations and Omissions......................27

    b.   Plaintiffs State a Claim for Failure to Destroy Records Under § 56:8-162 of the CFA ....................................................................30

    c.   Plaintiffs State a Claim for Failure to Notify Under § 56:8-163 of the CFA .............................32

3.   Plaintiffs State Claims Under New Jersey Common Law ...................................................34

    a.   Plaintiffs State a Claim for Negligence................34

    b.   Plaintiffs State a Claim for Breach of Contract ...............................................................35

    c.   Plaintiffs State a Claim for Invasion of Privacy..................................................................37

    d.   Plaintiffs State a Claim for Unjust Enrichment ..........................................................38

IV.   CONCLUSION ..................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A-1 Credit & Assur. Co. v. Trans Union Credit Info. Co.*,
  678 F. Supp. 1147 (E.D. Pa. 1988)................................................................. 19, 23

*Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*,
  No. 08-4708, 2010 WL 1931135 (D.N.J. May 12, 2010) ...................................20

*Alston v. Countrywide Fin. Corp.*,
  585 F.3d 753 (3d Cir. 2009) ...............................................................................9

*Anderson v. Hannaford Bros. Co.*,
  659 F.3d 151 (1st Cir. 2011) ............................................................... 12, 13, 36

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................5

*Bivings v. Wakefield*,
  316 F. App'x 177 (3d Cir. 2009)........................................................................41

*Carlton v. Choicepoint, Inc.*,
  CIV.08-5779(RBK/KMW), 2009 WL 4127546 (D.N.J. Nov. 23, 2009) ...........21

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) .........................................................................................19

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ............................................................................... 14, 15

*Constitution Party of Pennsylvania v. Aichele*,
  757 F.3d 347 (3d Cir. 2014) ....................................................................... 14, 16

*Cox v. Sears Roebuck & Co.*,
  138 N.J. 2 (1994) .............................................................................................27

*D.G. v. Somerset Hills Sch. Dist.*,
  559 F. Supp. 2d 484 (D.N.J. 2008)........................................................ 6, 18, 33

*Danvers Motor Co. v. Ford Motor Co.*,
  432 F.3d 286 (3d Cir. 2005) ...........................................................................7, 8

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Demaria v. Horizon Healthcare Servs., Inc.*,
2:11-CV-7298 WJM, 2013 WL 3938973 (D.N.J. July 31, 2013)................. 38, 39

*DiGianni v. Stern's*,
26 F.3d 346 (2d Cir. 1994) ...................................................................................23

*Dura Sys., Inc. v. Rothbury Invs., Ltd.*,
886 F.2d 551 (3d Cir.1989) ...................................................................................26

*Edwards v. First Am. Corp.*,
610 F.3d 514 (9th Cir. 2010) ..................................................................................9

*Foman v. Davis*,
371 U.S. 178 (1962) ...............................................................................................41

*FTC v. Wyndham Worldwide Corp.*,
CIV.A. 13-1887 ES, 2014 WL 1349019 (D.N.J. Apr. 7, 2014)...........................11

*Garcia v. UnionBancal Corp.*,
No. 06-cv-3672 CRB, 2006 WL 2619330 (N.D. Cal. Sept. 12, 2006) ...............23

*Garnett v. Millennium Med. Mgt. Res., Inc.*,
No. 10-cv-3317, 2010 WL 5140055 (N.D. Ill. Dec. 9, 2010)..............................23

*Gennari v. Weichert Co. Realtors*,
148 N.J. 582 (1997) ...................................................................................... 28, 29

*Griffin v. Welch*,
4:12-CV-148-CWR-FKB, 2013 WL 5423804 (S.D. Miss. Sept.26,
2013), *aff'd*, 13-60886, 2014 WL 4294928 (5th Cir. Sept. 2, 2014) ..................25

*Harnish v. Widener Univ. Sch. of Law*,
12-CV-00608 WHW, 2013 WL 1890276, (D.N.J. May 3, 2013) .......................28

*Havemann v. Astrue*,
No. ELH-10-1498, 2012 WL 4378143 (D. Md. Sept. 24, 2012)........................17

*Holmes v. Countrywide Fin. Corp.*,
No. 5:08-CV-00205-R, 2012 WL 2873892 (W.D. Ky. July 12, 2012) ..............26

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*In re Adobe Sys., Inc. Privacy Litig.*,
   13-CV-05226-LHK, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014).............. 13, 14

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   No. 03-4558, 2008 WL 4126264 (D.N.J. Sept. 2, 2008) ....................................40

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
   No. 12-347 (JEB), 2014 WL 1858458 (D.D.C. May 9, 2014)...........................12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   2014 WL 223677 (S.D. Cal. Jan. 21, 2014) ......................................................15

*In re: Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................8

*Keith v. Truck Stops Corp. of Am.*,
   909 F.2d 743 (3d Cir. 1990) ..............................................................................34

*Knechtel v. Choicepoint, Inc.*,
   CIV.08-5018 (RBK/KMW), 2009 WL 4123275 (D.N.J. Nov. 23, 2009) ..........23

*Krottner v. Starbucks Corp.*,
   C09-0216-RAJ, 2009 WL 7382290 (W.D. Wash. Aug. 14, 2009).............. 16, 34

*Leang v. Jersey City Bd. of Educ.*,
   198 N.J. 557 (2009) .................................................................................... 37, 38

*Lewis v. Ohio Prof'l Elec. Network LLC*,
   190 F. Supp. 2d 1049 (S.D. Ohio 2002)..................................................... 20, 21

*Lieberson v. Johnson & Johnson Consumer Cos.*,
   865 F. Supp. 2d 529 (D.N.J. 2011)....................................................................29

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................7

*Lynch v. Tropicana Products*,
   Civil Action No. 2:11-cv-07382 (DMC)(JAD), 2013 WL 2645050 (D.N.J.
   June 12, 2013).....................................................................................................40

# TABLE OF AUTHORITIES
## (cont.)

**Page(s)**

*Malleus v. George*,
 641 F.3d 560 (3d Cir. 2011) ....................................................................6

*Mauro v. Raymark Indus., Inc.*,
 116 N.J. 126 (1989) ...........................................................................35

*Mickens v. Ford Motor Co.*,
 900 F. Supp. 2d 427 (D.N.J. 2012).........................................................28

*Miller v. Am. Family Publishers*,
 284 N.J. Super. 67 (Ch. Div. 1995)..................................................... 27, 28, 33

*Moyer v. Michaels Stores, Inc.*,
 14 C 561, 2014 WL 3511500 (N.D. Ill. July 14, 2014) ......................................15

*Murphy v. Implicito*,
 392 N.J. Super. 245 (App. Div. 2007).....................................................36

*Nappe v. Anschelewitz, Barr, Ansell & Bonello*,
 97 N.J. 37 (1984) ...............................................................................36

*Olwell v. Medical Info. Bureau*,
 No. Civ. 01-1481 JRTFLN, 2003 WL 79035 (D. Minn. Jan. 7, 2003)...............20

*Ori v. Fifth Third Bank*,
 674 F. Supp. 2d 1095 (E.D. Wis. 2009) ...............................................20

*Paul v. Houlihan's Restaurants, Inc.*,
 CIV. 12-0025 JBS/JS, 2012 WL 6652754 (D.N.J. Dec. 20, 2012) ....................40

*Phillips v. Cnty. of Allegheny*,
 515 F.3d 224 (3d Cir. 2008) .................................................................6

*Pisciotta v. Old Nat'l Bancorp*,
 499 F.3d 629 (7th Cir. 2007)......................................................... 12, 13

*Polanco v. Omnicell, Inc.*,
 988 F. Supp. 2d 451 (D.N.J. 2013).......................................................14

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

*Poltrock v. NJ Auto. Accounts Mgmt. Co.*,
   CIVA3:08CV1999FLW, 2008 WL 5416396 (D.N.J. Dec. 22, 2008) ................30

*Rasor v. Retail Credit Co.*,
   554 P.2d 1041 (Wash. 1976) ...................................................................22

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) ....................................................... 7, 11, 12

*Resnick v. AvMed, Inc.*,
   693 F.3d 1317 (11th Cir. 2012) ............................................................8, 9

*Rowe v. UniCare Life and Health Ins. Co.*,
   No. 09 C 2286, 2010 WL 86391 (N.D. Ill. Jan. 5, 2010)............................ 20, 26

*Saltiel v. GSI Consultants, Inc.*,
   170 N.J. 297 (2002) ...............................................................................35

*Strautins v. Trustwave Holdings, Inc.*,
   12 C 09115, 2014 WL 960816 (N.D. Ill. Mar. 12, 2014) ............................ 23, 26

*Tabata v. Charleston Area Med. Ctr., Inc.*,
   759 S.E.2d 459 (W. Va. 2014) .................................................... 10, 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...............................................................................29

*Trans Union Corp. v. Fed. Trade Comm'n*,
   245 F.3d 809 (D.C. Cir. 2001) ................................................................22

*United States v. Ashurov*,
   726 F.3d 395 (3d Cir. 2013) ....................................................... 30, 31, 32

*Warth v. Seldin*,
   422 U.S. 490 (1975) .................................................................................9

*Willingham v. Global Payments, Inc.*,
   No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ..............26

# TABLE OF AUTHORITIES
## (cont.)

Page(s)

## STATUTES

United States Constitution
Article III ..................................................................................... passim

Fair Credit Reporting Act
15 U.S.C. §§ 1681 *et seq.* ............................................................ passim

Health Insurance Portability and Accountability Act of 1996
42 U.S.C. § 1320d-2(d)(2) ...................................................................4

New Jersey Consumer Fraud Act
§§ 56:8-2 *et seq.* ..................................................................................2
N.J.S.A. § 56:8-2 ..................................................................... 27, 28, 29
N.J.S.A. § 56:8-19 .............................................................................10
N.J.S.A. § 56:8-162 ............................................................. 27, 30, 31, 32
N.J.S.A. § 56:8-163 .................................................................. 27, 30, 33

New Jersey Truth-in Consumer Contract, Warranty and Notice Act, N.J.S.A.
§§ 56:12-14 *et seq.* ..............................................................................3

## RULES

Federal Rules of Civil Procedure
Rule 9(b) ............................................................................... 27, 29
Rule 11 ...............................................................................................26
Rule 12(b)(1) ..................................................................................6, 18
Rule 12(b)(6) ..................................................................................6, 33

## AGENCY MATERIALS

Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act* at
66 (July 2011) ...................................................................................24

Jessica Rich, Director, Bureau of Consumer Protection, FTC, *The FTC's Big Data
Message: Privacy is Fundamental* (Sept. 10, 2014) ...........................................19

## TABLE OF AUTHORITIES
### (cont.)

**Page(s)**

## OTHER AUTHORITIES

*Webster*'s NEW WORLD DICTIONARY,
   76 (1988)................................................................................................32

*Webster's* THIRD NEW INTERNATIONAL DICTIONARY,
   645 (1986)................................................................................................25

## I.    PRELIMINARY STATEMENT

Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey ("Horizon" or "Defendant") is a recidivist.  It collected its current and former members' sensitive personal and medical information, including their names, dates of birth, Social Security numbers ("SSN(s)"), addresses, medical histories, test and laboratory results, and other clinical information (collectively "PII/PHI") and represented falsely that it had encrypted and otherwise protected that information.  ¶¶1-2, 26-27, 38 ("¶" refers to paragraphs of the Consolidated Class Action Complaint ("CCAC")).

Despite repeated prior laptop thefts from its premises and thefts involving the compromise of PII/PHI, ¶¶24-31, Horizon failed to encrypt its members' PII/PHI or otherwise ensure that it was safe, resulting in the theft of two laptops in November 2013 containing the unencrypted PII/PHI of Plaintiffs Courtney Diana, Karen Pekelney, Mark Meisel, and Mitchell Rindner ("Plaintiffs"), and members of the proposed class ("Class Members").  ¶32.

Horizon was required by law to protect Plaintiffs' and Class Members' PII/PHI; Horizon received insurance premiums by, or on behalf of, Plaintiffs and Class Members, a portion of which should have been used to protect that information.  ¶¶20, 23, 59, 111.  However, because Horizon did not protect Plaintiffs' and Class Members' PII/PHI, they have suffered economic injury,

identity theft, been deprived of statutory and common law legal rights, and face an imminent risk of harm, establishing Article III standing.

Horizon is a Consumer Reporting Agency under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, because it assembles and evaluates Plaintiffs' and Class Members' information and provides it to "health care providers, their billing agents, insurance companies and others."  ¶80.  Horizon violated FCRA by failing to institute reasonable procedures to ensure that sensitive information was not accessed for impermissible purposes and by failing to protect medical information.

Plaintiffs also state claims for violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. §§ 56:8-2 *et seq.*, because Horizon misrepresented that it had encrypted its computers and protected its members' PII/PHI and omitted to disclose that its computers were not encrypted.  Horizon also violated this statute by failing to destroy former members' PII/PHI, failing to employ technologies to destroy PII/PHI in the event of theft, and by failing to disclose promptly the November 2013 data breach.  Finally, Plaintiffs adequately plead claims for negligence, breach of contract, invasion of privacy, and unjust enrichment under common law.[1]

---

[1] Plaintiffs consent to dismissal without prejudice of their claim pursuant to the New Jersey Truth-in Consumer Contract, Warranty and Notice Act, N.J.S.A.

*Footnote continued on next page*

Horizon attempts to refute these well-pled claims by, inter alia, raising issues of fact which are not appropriate on this motion to dismiss.  Defendant's motion should be denied in its entirety.

## II.   FACTUAL BACKGROUND

Horizon is a New Jersey-based company providing health insurance to roughly 3.7 million people, including Plaintiffs and Class Members.   ¶¶7-11. When Plaintiffs and Class Members enrolled in Horizon's health insurance plans, they provided a variety of sensitive, personal information, including their SSNs. ¶13.  Once enrolled, Horizon collected additional information about each of them, including medical information.   ¶14.   Plaintiffs and Class Members entrusted Horizon to protect the privacy of their sensitive information, and a portion of the monthly premiums they paid (or which were paid on their behalves) to Horizon was to be used for such protection.[2]  ¶¶20, 59, 111.

Since 2008, at least six Horizon laptops have been stolen, including the two laptops stolen in early November 2013 from Horizon's headquarters that contained Plaintiffs' unencrypted PII/PHI (the "Data Breach").   ¶¶24, 28, 32.   The Data Breach was not the first theft of a laptop from Horizon's headquarters.   ¶¶24-31.

---

*Footnote continued from previous page*
§§ 56:12-14 *et seq.*

[2] In addition to Plaintiffs and Class Members, roughly three million additional individuals entrust Horizon to protect their PII/PHI and pay Horizon monthly premiums to cover the costs of such protection.

Nor was it the first theft of a Horizon laptop containing unencrypted PII/PHI; in January 2008, an unsecured Horizon laptop containing the PII of roughly 300,000 members was stolen.  ¶24.

The appropriate way to protect PII/PHI on a laptop is with encryption, and following the 2008 laptop theft, Horizon publically stated it would encrypt all laptops.  ¶¶26-27, 38.  Further, Horizon's Privacy Policy states that it "maintain[s] appropriate administrative, technical and physical safeguards to reasonably protect your Private Information."   ¶17.   In spite of these representations, Horizon maintained unencrypted PII/PHI on its laptops and other computers in violation of established industry practices as well as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[3]  ¶¶17, 23, 42.

The truth regarding Horizon's continued, "very sloppy" data protection emerged in early November 2013 when the Data Breach occurred.  ¶¶2, 41.

The Data Breach compromised the PII/PHI of both current and former members of Horizon's health plans.  ¶8.  For instance, Meisel's Horizon insurance policy ended around October 2012, and his medical claims were submitted and

---

[3] A health plan that "maintains or transmits health information shall maintain reasonable and appropriate administrative, technical, and physical safeguards-- (A) to ensure the integrity and confidentiality of the information; (B) to protect against any reasonably anticipated-- (i) threats or hazards to the security or integrity of the information; and (ii) unauthorized uses or disclosures of the information; and (C) otherwise to ensure compliance with this part by the officers and employees of such person."  42 U.S.C. § 1320d-2(d)(2).

paid in full prior to November 1, 2012. *Id.* Nonetheless, Meisel's PII/PHI was compromised as a result of the Data Breach even though by that time he had not been a member of a Horizon insurance plan for over one year.

Horizon learned of the Data Breach on November 4, 2013, and notified some members by letter on December 6, 2013, more than one month after the incident. ¶¶10, 37. Not all affected members received that notice. ¶10.

Plaintiff Rindner employs meticulous protocols to protect his identity, such as shredding all documents containing his SSN prior to discarding them; however, he was not notified of the Data Breach for nearly three months and had his identity stolen, causing him to spend considerable time and money to remedy the identity theft. ¶10. Although Rindner was able to remedy some of the harm caused by the identity theft, he has not been made whole:  his SSN is now tainted, and he has been denied credit because of the theft of his identity.  ¶10.

## III.   LEGAL ARGUMENT

Defendant's motion to dismiss must be denied because Plaintiffs have pled plausible factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Plausibility "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss, the Court must accept as true all allegations in the complaint and the "plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quotation omitted). When considering a facial challenge[4] to subject matter jurisdiction pursuant to Rule 12(b)(1), "the Court assumes that the allegations in the complaint are true." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court "may generally not consider matters extraneous to the pleadings." (quotation omitted). *Id.*

---

[4]   Defendant claims in footnote 2 of its Memorandum of Law in Support of Defendant Horizon Healthcare Services, Inc.'s Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 40-1) ("Def.'s Mem.") that the Court is not confined to allegations in the CCAC when considering a factual challenge to the Court's jurisdiction under Rule 12(b)(1). However, Defendant is not "factually challenging the jurisdictional allegations set forth in the complaint;" instead, Defendant is making a facial challenge "by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *D.G.*, 559 F. Supp. 2d at 491. Thus, because Defendant attacks the face of the complaint rather than the jurisdictional facts pled in ¶5 of the CCAC, the Court must "assume[] that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Id.*

### A.    Tata's Standard Deputation Agreements

Plaintiffs have Article III standing because they have alleged "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed by the requested relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 590 (1992) (quotations omitted).  Defendant does not challenge the redressability prong and acknowledges that Rindner has suffered an injury.  Rather, Defendant challenges whether Plaintiffs' other harms constitute Article III injury and whether Rindner's injury is fairly traceable to Defendant's conduct.   Both challenges fail.

### 1.    Plaintiffs' Past and Future Harms Satisfy Injury-in-Fact

Plaintiffs have alleged past and future harm, both of which satisfy injury-in-fact because each is "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quotation omitted).  However, "[i]njury-in-fact is not Mount Everest."  *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005) (emphasizing injury-in-fact's "very generous" contours).  Here, Plaintiffs have pled concrete, particularized, and actual harm *that has already occurred* as well as concrete, particularized, and imminent future harm, both of which satisfy the injury prong.

### a.   Concrete, Particularized, and Actual Harm:  *Past Harm*

Plaintiffs have alleged three types of concrete, particularized, and actual harm that have already occurred: economic injury, violations of statutory and common law legal rights, and actual identity theft.

### i.   Economic Injury

Plaintiffs have Article III standing because they alleged that they received less than they bargained for, resulting in economic injury.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323, 1328 (11th Cir. 2012) (economic injury established standing where plaintiffs paid for data security through monthly premiums and defendant failed to secure their data); *In re: Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (economic injury can occur both when a plaintiff gives more or acquires less in a transaction than he or she otherwise would have).  Because economic injury is "a classic form of injury-in-fact . . . ., it is often assumed without discussion."  *Danvers Motor Co.*, 432 F.3d at 293 (citation omitted).

To receive health insurance, Plaintiffs paid premiums to Defendant, or had such premiums paid on their behalves, and they provided Defendant with their PII/PHI.  ¶¶59, 111, 128.  Defendant's Privacy Policy explicitly stated that Horizon would protect Plaintiffs' PII/PHI, meaning that a portion of Plaintiffs' premiums was supposed to be allocated for such purposes.  ¶¶17, 59, 111, 128.  However,

because Defendant did not encrypt all computers, Plaintiffs received less than they bargained for, constituting concrete, particular, and actual economic injury, which is sufficient for Article III standing.[5]   *See Resnick*, 693 F.3d at 1323, 1328.

### ii.   Violation of Common Law and Statutory Rights

Plaintiffs also satisfy injury-in-fact "by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (quotation and citations omitted); *see also Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009) ("Certainly, the fact that plaintiffs' injury is non-monetary is not dispositive.").   The determination of whether a statute creates legal rights sufficient to confer standing turns on "whether the . . . statutory provision . . . properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.   To make such a determination, the Court "must look to the text of [the statute] to determine whether it prohibited Defendants' conduct; if it did, then Plaintiff has demonstrated an injury sufficient to satisfy Article III." *Edwards v. First Am. Corp.,* 610 F.3d 514, 517 (9th Cir. 2010).

Here, the statutory text of FCRA and the CFA create legal rights, and Defendant's violation of those rights creates Article III standing. *See* 15 U.S.C. § 1681p (FCRA) ("An action to enforce any liability created under this subchapter

---

[5] Another way to measure Plaintiffs' economic injury is using the market value of the stolen PII/PHI, which is $50 per record, as a proxy.  ¶¶50, 61.

may be brought in any appropriate United States district court, without regard to the amount in controversy"); N.J.S.A. § 56:8-19 (CFA) ("Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.").[6]

Similarly, the common law also can create rights, such as the right to privacy, the invasion of which confers Article III standing. *Tabata v. Charleston Area Med. Ctr., Inc.*, 759 S.E.2d 459, 464 (W. Va. 2014) (finding plaintiffs' "concrete, particularized, and actual" "legal interest in having their medical information kept confidential" sufficient to confer standing to sue for breach of privacy resulting from inadvertent disclosure of their medical information). Plaintiffs state common law claims for negligence, breach of contract, invasion of privacy, and unjust enrichment, each of which involves Defendant's violation of Plaintiffs' legal rights.[7]

---

[6] As discussed in Section III.B.2 below, the CFA has its own standing requirement which Plaintiffs have satisfied.

[7] The Third Circuit is currently considering whether violation of a common law right confers Article III standing in data privacy cases. *In Re: Google Inc. Cookie Placement Consumer Privacy Litig.*, No. 13-4300 (3d Cir.).

### iii.    Rindner Suffered Actual Harm

Plaintiffs also satisfy Article III by alleging past injury in the form of actual identity theft suffered by Rindner:  Because of the Data Breach and Defendant's failure to notify Rindner of the breach in a reasonable amount of time, Rindner's identity was stolen, and his SSN is now tainted.  ¶10.  As a result, his credit history today is not the same as it would have been but for the Data Breach, constituting injury-in-fact.  *Reilly*, 664 F.3d at 45.

### b.    Concrete, Particularized, and Imminent Harm: *Future* Harm

The past harm described above places Plaintiffs at an imminent risk of future harm, constituting another basis for injury-in-fact.  The imminence of future harm in data breach cases depends upon two factors:   (1) whether any of the compromised data was *mis*used post-breach, causing injury, and ( ) whether the facts surrounding the data breach indicate that the data theft was sophisticated, intentional, or malicious.  *See Reilly*, 664 F.3d at 44 (explaining that threatened harms are "significantly more 'imminent' and 'certainly impending'" when plaintiffs allege that the stolen data was misused following the data theft or where the data theft itself was intentional or malicious); *FTC v. Wyndham Worldwide Corp.*, CIV.A. 13-1887 ES, 2014 WL 1349019, at *17 (D.N.J. Apr. 7, 2014) (finding situations where plaintiffs allege post-breach data misuse distinguishable from cases that do not allege misuse); *Anderson v. Hannaford Bros. Co.*, 659 F.3d

151, 164-166 (1st Cir. 2011) (sophistication of data theft and actual misuse of stolen data created "a reasonable basis for fearing" that identity theft would result from the data breach); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 632 (7th Cir. 2007) ("[T]he scope and manner of access suggests that the intrusion was sophisticated, intentional and malicious"); *cf. In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, No. 12-347 (JEB), 2014 WL 1858458, at *13 (D.D.C. May 9, 2014) (future harm not imminent where back-up tapes were stolen in a "low-tech, garden-variety" manner from a car in conjunction with a GPS and car stereo). The Third Circuit has held that the presence of *either* of these factors increases the imminence of future harm. *Reilly*, 664 F.3d at 44. Here, *both* are present.

For instance, where the facts surrounding the data theft indicate that the data was taken *intentionally* (as opposed to *accidentally* or *incidentally* to the theft of other items), then it is reasonable to infer that the thief wanted the data. Here, the thief who stole the laptops from Horizon's headquarters evaded 24/7 security, dodged security cameras, and disabled the cable locks that secured both laptops to their workstations. ¶34. Far from the "low-tech, garden-variety" car theft in *SAIC*, "the scope and manner of access [present here] suggests that the intrusion was sophisticated, intentional and malicious," making the potential for future harm

substantial.[8]  *Pisciotta*, 499 F.3d at 632.   Defendant's suggestion that the Data Breach was an inside job further indicates that the theft was sophisticated, intentional, or malicious.  *See* ¶34.

When the facts show that the data was misused after the theft and that injury occurred as a result, as is the case here with respect to Rindner, it is reasonable to infer that the thief was able to access and make use of the data.

When both factors are present, as they are here, they together support the inference that the thief took the data intentionally so that it could be used to commit acts of identity theft, making the risk of future harm imminent.  *See In re Adobe Sys., Inc. Privacy Litig.*, 13-CV-05226-LHK, 2014 WL 4379916, at *8 (N.D. Cal. Sept. 4, 2014) (the danger of future harm was "certainly impending" where hackers intentionally gained unauthorized access to Adobe's servers and removed customer data; "[i]ndeed, the threatened injury here could be more imminent only if Plaintiffs could allege that their stolen personal information had already been misused.").  Defendant has not cited a single case where both factors were present.

---

[8] Because these facts give rise to a substantial potential for future harm, they also give rise to Plaintiffs' reasonable fear of future harm and reasonable expenditures undertaken to mitigate such harm.  *See Anderson*, 659 F.3d 151 at 164-166.  Thus, any out-of-pocket expenditures incurred by Plaintiffs to mitigate future harm constitute injury for Article III purposes.

Although Defendant relies heavily on *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013), Def.'s Mem. at 1, 3, 5-6, 11-13, *Clapper* does not change the above analysis for two reasons.  First, the Third Circuit recently clarified the limited reach of *Clapper* by allowing "plaintiffs to establish standing without showing a sufficiently certain harm" where national security considerations were not at issue.  *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 369, 371 (3d Cir. 2014) (Ambro, J., dissenting).[9]   In *Constitution Party of Pennsylvania*, plaintiffs alleged that *if* they were to submit nominating papers as part of the electoral process, and *if* objections to such papers were filed, and *if* plaintiffs chose to defend those nomination petitions, and *if* the objectors prevailed, and *if* the court finds some reason specific to the case or as demanded by justice to warrant fee shifting, *then and only then* will plaintiffs be required to pay for the costs of the proceeding.  *Id.* at *2.  The Third Circuit determined these were "not a speculative series of conditions" to make the threat of cost shifting insufficient to establish injury-in-fact.  *Id.* at *12-13.   The Third Circuit's clarification of *Clapper* is consistent with district courts that have concluded that Clapper did not impose a new framework for Article III standing.  *See, e.g.*, *In re Adobe Sys., Inc. Privacy*

---

[9] Prior to the Third Circuit's recent interpretation of *Clapper*, this Court applied *Clapper* in the context of a data breach in 2013.  *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 456, 466-467 (D.N.J. 2013).  However, *Polanco* is distinguishable because plaintiffs alleged *neither* identity theft nor facts supporting an intentional or malicious intrusion.

*Litig.*, 2014 WL 4379916, at *7 ("*Clapper* did not change the law governing Article III standing.  The Supreme Court did not overrule any precedent, nor did it reformulate the familiar standing requirements of injury-in-fact, causation, and redressability."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, MDL 11MD2258 AJB MDD, 2014 WL 223677, at * 8 (S.D. Cal. Jan. 21, 2014); *Moyer v. Michaels Stores, Inc.*, 14 C 561, 2014 WL 3511500, at *4-5 (N.D. Ill. July 14, 2014).

Second, even through the lens of *Clapper*, Plaintiffs have pleaded imminent harm.  Unlike the plaintiff in *Clapper* whose harm depended upon a "speculative chain of possibilities," such as the future policy decisions and actions of the Federal Government and future conclusions of Article III judges, *Clapper*, 133 S. Ct. at 1147, 1148, 1150, there is little need to speculate here: a thief stole Plaintiff's PII/PHI and used it to commit identity theft, causing actual harm to Rindner.  That thief has the PII/PHI of the other Plaintiffs and Class Members and knows how to, and intends to, commit identity theft.  This is not a question of *if* the thief will use the PII/PHI of other Class Members to commit identity theft, it is a question of *when*, making future harm far from speculative.  Because the identity theft could occur at any moment, the threat is imminent.[10]

---

[10] Because the imminent risk of harm here is not dependent upon a speculative chain of future events, costs that Plaintiffs and Class Members will incur to protect their identities after the first year of credit protection expires constitute concrete,

*Footnote continued on next page*

Thus, the facts surrounding the theft of the Horizon laptops and the fact that Rindner suffered actual identity theft show that the risk of future harm is imminent, constituting injury-in-fact under Article III.

### 2.     Rindner's Identity Theft is Fairly Traceable to the Data Breach

Plaintiffs have pled facts establishing that Rindner's identity theft was "fairly traceable" to the Data Breach.  The "fairly traceable" prong is about causation, and "[c]ausation in the context of standing is not the same as proximate causation from tort law." *Constitution Party of Pennsylvania*, 757 F.3d at 366. Concurrent causation is permissible in standing analysis, and as long as the conduct is at least in part responsible for a plaintiff's injury, causation is established for standing purposes.  *Id.*  Further, as long as the connection between the conduct and the injury is traceable, "an indirect causal relationship will suffice." *Id.* (quotation omitted).

Plaintiffs have presented a plausible explanation for Rindner's identity theft: Rindner regularly took steps to protect his PII/PHI, he was not notified of the Data Breach for three months, and in the ensuing time, his identity was stolen.  ¶10. Thus, the Data Breach resulted in Rindner's unencrypted PII/PHI falling into the

*Footnote continued from previous page*
particularized, and actual harm, establishing Article III standing.  *See Krottner v. Starbucks Corp.*, C09-0216-RAJ, 2009 WL 7382290, at *4 (W.D. Wash. Aug. 14, 2009) (conduct creating a risk of future injury may cause present injury in satisfaction of Article III).

hands of a thief, and Defendant's failure to notify Rindner of the breach in a timely fashion meant that his credit was not being monitored, enabling a thief to steal his identity.

Defendant speculates that Rindner's identity theft could not have resulted from the Data Breach because a fraudulent *joint* tax return was involved, implying that the thief must have obtained *both* Rindner's and his wife's sensitive information from a source *other than* the stolen Horizon laptops. This argument is flawed because there are many ways in which a thief could have obtained Rindner's wife's information, including locating it on one of the stolen Horizon laptops,[11] or by cross-referencing Rindner's information with publicly available data sources to obtain his wife's information. *See, e.g.*, *Havemann v. Astrue*, No. ELH-10-1498, 2012 WL 4378143, at *12 (D. Md. Sept. 24, 2012) ("the practical reality of modern and ever changing technology requires the consideration of the sophisticated ways in which publicly available data may be used in conjunction with [other sensitive information] to invade personal privacy"). *See also* Exhibit A to U.S. Mot. To Revoke or Modify Def.'s Conditions of Bond

---

[11] If the Court grants this aspect of Defendant's motion, Plaintiffs would be able to amend and plead the following additional facts:  Rindner provided his wife's SSN to Horizon when he enrolled.  When he called Horizon in February 2014 to inquire about the Data Breach, he asked whether his wife's information was also compromised.  The Horizon representative neither confirmed nor denied whether Rindner's wife's PII/PHI had been compromised by the Data Breach.

Pursuant to 18 U.S.C. § 3148, at ¶8(i), *United States v. Ealy*, 3:13-cr-175-MRB (S.D. Oh. Apr. 13, 2014), ECF No. 36 (to commit identity theft, defendant used one victim's information to obtain information about her husband), Exhibit A to Declaration of Joseph J. DePalma, dated September 22, 2014 ("DePalma Decl.").

Rindner pled that his information was compromised because of the Data Breach, and his injury is traceable to the Data Breach regardless of how a thief obtained his wife's information. Moreover, the question of how a thief obtained his wife's information is a factual inquiry not properly before the Court in considering Defendant's facial challenge pursuant to Rule 12(b)(1). *See D.G.*, 559 F. Supp. 2d at 491. Defendant's motion to dismiss for failure to establish the "fairly traceable" prong of Article III standing must be denied.

## B.  Plaintiffs State Claims Under Federal and State Law

Plaintiffs adequately state claims under federal and state statutes as well as New Jersey common law sufficient to withstand Defendant's motion to dismiss.

### 1.  Plaintiffs State Claims Under FCRA

FCRA serves to ensure that entities regularly collecting and transmitting certain consumer information "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality . . . and proper utilization of such information." 15 U.S.C.

§ 1681b.   FCRA provides private causes of action stemming from willful or negligent failures "to comply with any requirement imposed under" the act. 15 U.S.C. § 1681n (willful noncompliance); 15 U.S.C. § 1681o (negligent noncompliance).

FCRA applies to Horizon because Horizon is a consumer reporting agency under the statute.  15 U.S.C. § 1681a(f).  The Federal Trade Commission ("FTC") has explained that a "consumer reporting agency is a company that compiles consumer information and provides it to third parties to make employment, credit, housing, insurance, and other similar decisions."  Jessica Rich, Director, Bureau of Consumer Protection, FTC, *The FTC's Big Data Message: Privacy is Fundamental* (Sept. 10, 2014).  Because the FTC is charged with enforcing FCRA, considerable weight should be given to its construction of its statutory scheme. 15 U.S.C. § 1681s; *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *A-1 Credit & Assur. Co. v. Trans Union Credit Info. Co.*, 678 F. Supp. 1147, 1151 (E.D. Pa. 1988) (The FTC's interpretation of FCRA is entitled to substantial weight.)

Plaintiffs allege that Horizon violated FCRA by willfully and negligently (1) failing to adopt and maintain reasonable procedures in violation of 15 U.S.C. § 1681e, and (2) disclosing medical information for improper purposes in violation of 15 U.S.C. §§ 1681b(g)(4), and 1681b(g)(3)(A).

### a. Horizon Is a Consumer Reporting Agency under FCRA

FCRA applies to many types of entities, including national credit bureaus, banks, data aggregators, systems used for law enforcement, check authorization services, and *insurance providers*. *See Rowe v. UniCare Life and Health Ins. Co.*, No. 09 C 2286, 2010 WL 86391, at *3 (N.D. Ill. Jan. 5, 2010) (insurance company); *Ori v. Fifth Third Bank*, 674 F. Supp. 2d 1095, 1098 (E.D. Wis. 2009) (defendant collected, processed, and transmitted mortgage information); *Olwell v. Medical Info. Bureau*, No. Civ. 01-1481 JRTFLN, 2003 WL 79035, at *5 (D. Minn. Jan. 7, 2003) (insurance company); *Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*, No. 08-4708, 2010 WL 1931135, at *5–10 (D.N.J. May 12, 2010) (LexisNexis); *Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1058 (S.D. Ohio 2002) (Michigan Sheriff's Jail Linkage System); *see also* Stipulated Final Judgment and Order for Civil Penalties, Permanent Injunction, and Other Equitable Relief, *United States v. Certegy Check Services, Inc.*, No. 1:13-cv-01247 (D.D.C. Aug. 15, 2013), ECF No. 2-1 (check authorization service).

FCRA defines a Consumer Reporting Agency ("CRA") as follows:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

> The CRA definition encompasses at least four elements that must be met for an entity to be found a CRA: (1) it must act in exchange for compensation; (2) it must 'regularly' assemble or evaluate information on consumers; (3) its purpose in evaluating this information must be to furnish consumer reports; and (4) it must utilize interstate commerce in the preparation or furnishing of the consumer report.

*Carlton v. Choicepoint, Inc.*, CIV.08-5779(RBK/KMW), 2009 WL 4127546, at *3 (D.N.J. Nov. 23, 2009) (citing *Lewis*, 190 F. Supp. 2d at 1056). The original purpose for which the information is collected and not the ultimate use to which it is put controls whether the entity is a CRA. *See Lewis*, 190 F. Supp. 2d at 1059. Horizon is a CRA because it meets each element of the definition.

First, in exchange for providing health insurance, Horizon collects premiums; premiums are monetary fees and therefore are the kind of compensation described in FCRA. ¶¶59, 80, 111, 114, 128.

Second, Horizon regularly collects a variety of consumer information, including collecting information from its members; from transactions with affiliates and health care providers; from other consumer-reporting agencies, and from Medicare, state regulators, and law enforcement agencies. ¶14. Horizon assembles this consumer information and uses it for a wide variety of purposes, including setting health insurance rates, establishing eligibility for treatment, paying for health care, and for research, fundraising, and marketing. ¶¶15-16, 19.

Third, Horizon assembles this consumer information to furnish it to third parties to determine Plaintiffs' and Class Members' eligibility for health insurance. ¶¶15, 80-81.  The consumer information constitutes a consumer report because it "bear[s] on a consumer's . . . character, . . . personal characteristics, or mode of living which is used . . . or collected . . . for the purpose of establishing the consumer's eligibility for . . . insurance to be used primarily for personal, family, or household purposes."  15 U.S.C. § 1681a(d)(1).  Courts recognize that FCRA's definition of consumer report "does not seem very demanding, for almost any information about consumers arguably bears on their personal characteristics or mode of living."  *Trans Union Corp. v. Fed. Trade Comm'n*, 245 F.3d 809, 813 (D.C. Cir. 2001).  The purpose for which the information at issue was collected determines whether it constitutes a Consumer Report.  *Rasor v. Retail Credit Co.*, 554 P.2d 1041, 1047 (Wash. 1976).  Therefore, Horizon assembles consumer information for the purpose of furnishing consumer reports.

Fourth, Horizon regularly transmits consumer information to third parties, including "health care providers, their billing agents, insurance companies and others."  ¶80.  Defendant does not contest that this transmission involves interstate commerce.

Because each element has been satisfied, Horizon is a CRA under FCRA and thus required to adopt reasonable procedures to keep its members' PII/PHI

confidential and to not disclose medical information for improper purposes.[12]

### b.  Horizon's Inadequate Data Security Procedures Violated FCRA

Horizon violated 15 U.S.C. § 1681e(a), which the FTC has recognized as an independent avenue for relief under FCRA.  *See* Complaint, *In re Matter of SettlementOne Credit Corp.*, No. 082 3208 ¶¶15, 16 (Federal Trade Commission), Exhibit B to DePalma Decl.  *See also A-1 Credit & Assur. Co.*, 678 F. Supp. at 1151 (The FTC's interpretation of FCRA is entitled to substantial weight.).

Section 1681e(a) requires that CRAs, such as Horizon, "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under [15 U.S.C. § 1681b]."  The FTC has explained that § 1681e(a) requires a CRA to "have reasonable and effective procedures to limit unauthorized access to its databases. Such procedures may include a system of monitoring access to its database of consumer reports, including a system to monitor anomalies and other

---

[12] The cases relied upon by Horizon are distinguishable because in each, plaintiff failed to meet one or more prongs of the CRA definition.  *See, e.g.*, *Garnett v. Millennium Med. Mgt. Res., Inc.*, No. 10-cv-3317, 2010 WL 5140055 (N.D. Ill. Dec. 9, 2010) (no indication that consumer information was organized or assembled); *Garcia v. UnionBancal Corp.*, No. 06-cv-3672 CRB, 2006 WL 2619330 (N.D. Cal. Sept. 12, 2006) (information at issue specifically excluded from FCRA's definition of "consumer reports"); *Strautins v. Trustwave Holdings, Inc.*, 12 C 09115, 2014 WL 960816, at *8 (N.D. Ill. Mar. 12, 2014) (plaintiffs did not allege that consumer information was collected in order to furnish to third parties); *Knechtel v. Choicepoint, Inc.*, CIV.08-5018 (RBK/KMW), 2009 WL 4123275 (D.N.J. Nov. 23, 2009) (plaintiff did not allege that defendant assembled and evaluated information); *DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994) (same).

suspicious activity to guard against unauthorized access . . . .  Procedures also may include . . . installation and use of appropriate computer hardware and software. . . ."  Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act* at 66 (July 2011).

Horizon violated FCRA's requirement that it maintain reasonable procedures by failing to implement and maintain reasonable, industry-standard security measures to ensure that Plaintiffs' and Class Members' PII/PHI was not accessed for an impermissible purpose.  ¶¶83-84.  Therefore, Plaintiffs state a claim under § 1681e(a).

### c. Horizon Violated FCRA by Failing to Protect Medical Information

Horizon failed to protect medical information in violation of §§ 1681b(g)(4) and 1681b(g)(3)(A).  ¶88-90.  Because Horizon is a person that receives medical information in connection with the business of insurance, under FCRA, Horizon shall not disclose such information to any other person except as necessary to carry out the purpose for which it received the information or as permitted by statute, regulation, or order.  *See* 15 U.S.C. §§ 1681b(g)(4), 1681b(g)(3)(A).  Horizon's failure to protect and safeguard the PII/PHI of Plaintiffs and Class Members resulted in its disclosure to one or more third-parties.  This violates FCRA because the disclosure was not necessary to carry out the purpose for which Horizon received the information, nor was it permitted by statute, regulation, or order.

Horizon argues that it is not a CRA and, therefore, § 1681b(g)(4) does not apply to it. As discussed above, Horizon is a CRA, and Plaintiffs' and Class Members' PII/PHI (which includes medical information) constitutes consumer reports.

Horizon argues that it did not violate § 1681b(g)(4) because it did not *disclose* the medical information. To "disclose" means "to expose to view" or "to make known." *Webster's* THIRD NEW INTERNATIONAL DICTIONARY, p. 645 (1986). Horizon stored Plaintiffs' and Class Members' PII/PHI on unencrypted laptops, knowing that its laptops were prone to theft and that laptops had been stolen from its headquarters in the past. ¶¶24-31. Horizon's choice to leave (1) data unencrypted, (2) on laptops, which have been stolen several times from Horizon in the past, and (3) in a place where such laptops have been stolen is tantamount to disclosure because Horizon placed the PHI in a location where it was essentially exposed. *Cf. Tabata*, 759 S.E.2d at 466 (PHI characterized as disclosed when it was placed on the Internet and could be exposed if someone were to conduct an advanced search). Thus, because of Horizon's reckless, willful, and negligent disregard for protecting Plaintiffs' and Class Members' PII/PHI, their medical information was "disclosed" by Horizon to data thieves.[13]

---

[13] Horizon's reliance upon *Griffin v. Welch*, 4:12-CV-148-CWR-FKB, 2013 WL 5423804 (S.D. Miss. Sept.26, 2013), *aff'd*, 13-60886, 2014 WL 4294928 (5th Cir. Sept. 2, 2014), is misplaced because the opinion lacked any analysis of the issues

*Footnote continued on next page*

\* \* \* \*

Horizon's suggestion that Plaintiffs' FCRA claims raise Rule 11 issues should be rejected out of hand because Plaintiffs' FCRA claims are neither "patently unmeritorious [n]or frivolous." *Dura Sys., Inc. v. Rothbury Invs., Ltd.*, 886 F.2d 551, 556 (3d Cir.1989). Rule 11 is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* (citing advisory committee notes to Fed. R. Civ. P. 11).

As set forth above, Plaintiffs unquestionably have a reasonable, good-faith basis to plead that Horizon is a CRA, and case law supports the assertion that an insurance company may be a CRA. *See Rowe*, 2010 WL 86391, at \*3 (plaintiff stated a claim for FCRA violation against insurance company).[14]

---

*Footnote continued from previous page*

present here; the plaintiff did not argue that the defendants were CRAs, nor did the plaintiff assert that his medical information constituted a consumer report. *Id.* at \*4.

[14] Horizon's reliance on *Holmes v. Countrywide Fin. Corp.*, No. 5:08-CV-00205-R, 2012 WL 2873892, at \*16 (W.D. Ky. July 12, 2012), is not persuasive because that opinion does not include any analysis of §§ 1681e(a), 1681b(g)(4) and 1681b(g)(3)(A). And, *Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013), relies on *Holmes* without explanation or analysis. Lastly, *Strautins*, 2014 WL 960816, at \*8, is factually distinguishable because here Plaintiffs allege based upon Horizon's own Privacy Policy that it collected and assembled consumer information and furnished such information to third parties.

## 2.      Plaintiffs State Claims Under the New Jersey CFA

To state a claim under the CFA, Plaintiffs must allege unlawful conduct, an ascertainable loss, and a causal relationship between the unlawful conduct and the loss. *Miller v. Am. Family Publishers*, 284 N.J. Super. 67, 74-76 (Ch. Div. 1995). The New Jersey Supreme Court has explained that "the [CFA] should be construed liberally in favor of consumers." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994). Plaintiffs state claims for misrepresentations and omissions in violation of N.J.S.A. § 56:8-2, failure to destroy records in violation of N.J.S.A. § 56:8-162, and failure to timely notify in violation of N.J.S.A. § 56:8-163.

### a.      Plaintiffs State Claims For Misrepresentations and Omissions

Plaintiffs allege unlawful conduct in the form of two affirmative acts (Horizon's 2008 public promise to encrypt all computers and the statement in Horizon's Privacy Policy that it would "maintain appropriate administrative, technical and physical safeguards to reasonably protect your Private Information") and one omission (Horizon had a duty to advise Plaintiffs and Class Members that it had not encrypted all computers and that its data security was inadequate). ¶¶138, 140, 142. Defendant challenges ascertainable loss, causation, and whether Plaintiffs have satisfied the pleading requirements of Fed. R. Civ. P. 9(b).

To establish ascertainable loss, Plaintiffs are required only to show that "[f]or their money, they received something less than, and different from, what

they reasonably expected in view of defendant's presentations."  *Miller*, 284 N.J. Super. at 90-91; *see also Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 437 (D.N.J. 2012) (citing *Union Ink Co. v. AT & T Corp.*, 352 N.J. Super. 617, 646 (App.Div.2002)) ("'An ascertainable loss occurs when a consumer receives less than what was promised.'"); *Harnish v. Widener Univ. Sch. of Law*, 12-CV-00608 WHW, 2013 WL 1890276, at *4 (D.N.J. May 3, 2013).   Here, Plaintiffs have alleged that they entrusted Horizon to protect their PII/PHI and that they reasonably expected that Horizon would do so.  ¶¶1, 139, 141.  However, because Horizon stored their unencrypted PII/PHI on laptops, they "received something less than, and different from, what they reasonably expected in view of defendant's presentations." *See Miller*, 284 N.J. Super. at 90-91.  Thus, Plaintiffs have alleged ascertainable loss.

To establish causation, the claimed loss must have occurred as a result of the unlawful conduct.  *Mickens*, 900 F. Supp. 2d at 437.  Plaintiffs need not show reliance because the CFA states that the "use or employment . . . of any . . . misrepresentation . . . or omission . . . *whether or not any person has in fact been misled, deceived or damaged thereby*, is declared to be an unlawful practice." N.J.S.A. § 56:8-2 (emphasis added); *see also Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607 (1997) (The CFA "does not require proof of reliance."). Plaintiffs satisfy causation as to the knowing omission because they alleged they

would not have enrolled or renewed their health plans with Horizon if Horizon had not concealed its inadequate data security. ¶145. Plaintiffs satisfy causation as to both affirmative acts because there is a causal nexus between their injury and Horizon's misrepresentations. Plaintiffs need not show that they relied upon Horizon's misstatements. See N.J.S.A. § 56:8-2; *Gennari*, 148 N.J. at 607.

To satisfy Rule 9(b), Plaintiffs must plead with sufficient particularity "to place the defendant on notice of the precise misconduct with which [they are] charged." *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (quotation omitted). Plaintiffs satisfy this standard because they have quoted the particular portion of Horizon's Privacy Policy containing the misstatement and the omission and have provided the Internet address for that policy. ¶¶14, 17. As to the 2008 statement, Plaintiffs have cited a specific article discussing a letter sent by Deborah Cieslik, a Horizon official, to the New Jersey legislature regarding Horizon's commitment to protecting its members' PII/PHI. ¶26.[15] These allegations put Horizon on notice of the precise misconduct with which it is charged. *See id.*

---

[15] The details surrounding Horizon's 2008 statement are incorporated into the CCAC by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Because Plaintiffs allege unlawful conduct (in the form of two misrepresentations and one omission), ascertainable loss, causation, and meet the pleading requirements of Rule 9(b), Defendant's motion to dismiss this claim must be denied.

### b.   Plaintiffs State a Claim for Failure to Destroy Records Under § 56:8-162 of the CFA

In violation of § 56:8-162 of the CFA, Horizon (1) recklessly stored PII/PHI on laptops well after such information was needed, as evidenced by the compromise of Meisel's PII/PHI over a year after he ceased being a member of a Horizon health plan; and (2) knowingly failed to implement any technology to automatically destroy sensitive data on laptops in the event of theft.  ¶¶8, 153. Defendant asserts that § 56:8-162 governs "how" records are destroyed and does not provide a duty to destroy unneeded records.  Def.'s Mem. at 36.[16]  Defendant's reading of the statute is wrong.

Before resorting to legislative history (as Defendant urges the Court to do), statutory interpretation "begin[s], as always, with the text of the law."  *United States v. Ashurov*, 726 F.3d 395, 398 (3d Cir. 2013).  Only where the plain text is

---

[16] Defendant also argues that Plaintiffs claims pursuant to N.J.S.A. §§56:8-162 and 163 should be dismissed because Plaintiffs fail to state a claim under the CFA. Def.'s Mem. at 36.  Defendant's reliance on *Poltrock v. NJ Auto. Accounts Mgmt. Co.*, CIVA3:08CV1999FLW, 2008 WL 5416396 (D.N.J. Dec. 22, 2008), is readily distinguishable because *Poltrock* tried to plead a violation under the Identity Theft Protection Act, not under the CFA.

ambiguous is it appropriate to turn to a statute's history. *Id.* at 400.  In examining

the plain text of the statute, the Court "must, if possible, give effect to every clause

and word of a statute." *Id.*

The plain text of the statute unambiguously states that it covers both the duty

to destroy records and the method of destruction.   First, the Section is titled

"Destruction of certain customer records; methods."  If "Destruction of certain

customer records" is understood to refer only to "how to destroy records", then the

word "methods" would be rendered meaningless, violating the rule against

surplusage.  *Cf. Ashurov*, 726 F.3d at 399 (applying the rule against surplusage to

interpret a federal statute).  Second, the text of the statute states:

> A business or public entity *shall* destroy, or arrange for the destruction
> of, a customer's records within its custody or control containing
> personal information, which is no longer to be retained by the
> business or public entity, *by* shredding, erasing, or otherwise
> modifying the personal information in those records to make it
> unreadable, undecipherable or nonreconstructable through generally
> available means.

N.J.S.A. § 56:8-162 (emphasis added).

Like the title, the text discusses the duty to destroy records ("A business . . .

shall destroy . . . a customer's records . . . containing personal information, which

is no longer to be retained by the business") *as well as* how to destroy those

records ("by shredding, erasing, or otherwise modifying the personal information

in those records to make it unreadable, undecipherable or nonreconstructable through generally available means").

Because a plain reading of the statute shows that it unambiguously covers both the duty to destroy records and how to destroy records, Defendant's failure to destroy PII/PHI after it was no longer needed violates N.J.S.A. § 56:8-162.

Defendant's failure to employ technologies to automatically wipe laptops in the event of theft also violates § 56:8-162.  ¶153.  That statute states that Horizon "shall destroy, *or arrange for the destruction*" of PII/PHI "within its custody or control . . . which is no longer to be retained."  N.J.S.A. § 56:8-162.  Consistent with the rule against surplusage, "arrange for the destruction" must have a meaning other than "destroy."  *Cf. Ashurov*, 726 F.3d at 399.  "Arrange" means "to make plans; prepare."  *Webster*'s NEW WORLD DICTIONARY, 76 (1988).  Thus, the statute requires that while PII/PHI is within Horizon's custody or control, Horizon must make plans to destroy it in the event it is no longer needed.  The absence of any automatic wiping or similar technology on the stolen laptops indicates that Horizon did not make such plans in violation of § 56:8-162.

### c. Plaintiffs State a Claim for Failure to Notify Under § 56:8-163 of the CFA

The CFA required Defendant to "disclose [the Data Breach] following discovery or notification of the breach . . . in the most expedient time possible and without unreasonable delay, consistent with . . . any measures necessary to

determine the scope of the breach." N.J.S.A. § 56:8-163. Defendant argues that Plaintiffs have not alleged injuries from this delay. Def.'s Mem. at 37-38.[17]

As articulated above, to establish ascertainable loss under the CFA, Plaintiffs are required only to show that "[f]or their money, they received something less than, and different from, what they reasonably expected in view of defendant's presentations." *Miller*, 284 N.J. Super. at 90-91. Section 56:8-163 requires that Horizon provide consumers expedient notice of a data breach, which in turn vests consumers with the legal right to be notified in a timely manner when their PII/PHI is compromised. Similarly, Horizon's Privacy Policy states that Horizon will notify members of any breach "without unreasonable delay of the occurrence." ¶17. Thus, Plaintiffs reasonably expected that Horizon would comply with the law by providing them with expedient notice of the Data Breach, satisfying ascertainable loss. Thus, Defendant's motion to dismiss this claim also should be denied.

---

[17] Defendant also argues that Plaintiffs fail to plead facts indicating that the disclosure was not expedient. Whether the one month delay (in the case of Diana, Pekelney, and Meisel) or several months (in the case of Rindner) constitutes "the most expedient time possible" in light of "measures necessary to determine the scope of the breach" is a question of fact not appropriate for consideration upon a 12(b)(6) motion. *See D.G.*, 559 F. Supp. 2d at 491.

### 3.    Plaintiffs State Claims Under New Jersey Common Law

### a.    Plaintiffs State a Claim for Negligence

Plaintiffs state a claim under New Jersey common law negligence because they have "establish[ed] that defendant breached a duty of reasonable care, which constituted a proximate cause of [their] injuries." *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990). As to the elements of the claim, Defendant challenges only whether Plaintiffs were injured, and if so, whether Defendant proximately caused such injury. Def.'s Mem. at 27-28. As discussed in Section III.A.1.b above, because the facts surrounding the data theft show *both* that Plaintiffs' and Class Members' PII/PHI was taken intentionally and was misused after the theft, the risk of future harm is imminent. Thus, Plaintiffs' future harm is "includible as an element of damage" because "they are *reasonably certain or reasonably probable* to follow." Def.'s Mem. at 28 (quoting *Mauro v. Raymark Indus., Inc.*, 116 N.J. 126, 133-134 (1989)).[18]

Moreover, the imminence of future harm begets present injury, as evidenced by Defendant's offer to provide one year of credit protection. ¶62; *Krottner*, 2009 WL 7382290, at *4 ("If Plaintiffs have suffered no present injury, then why is Starbucks offering them a present remedy?"). One year of credit protection is inadequate, ¶62, and the costs that Plaintiffs and Class Members will incur to

---

[18] The causal connection of Rindner's injuries to Defendant's breach of its duty of care is addressed above in Section III.A.2.

protect their identities after the first year is a compensable item of damages.  *See Mauro*, 116 N.J. at 136 (noting that the cost of medical surveillance for plaintiffs "with an unquantified enhanced risk of disease due to exposure to toxic chemicals" is a compensable item of damages).  Thus, Plaintiffs have alleged compensable damages proximately caused by Defendant's breach of its duty of care.

Defendant's reliance on the economic loss doctrine is misplaced because Horizon owed a duty to protect Plaintiffs' PII/PHI independent of the contract. "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002).  Here, Defendant owes an *independent duty* imposed by HIPAA to protect its members' PII/PHI, giving rise to a tort remedy for the breach of that duty.  ¶23.  Defendant's breach of that duty caused Plaintiffs and Class Members to suffer the damages discussed in the preceding two paragraphs.

### b.  Plaintiffs State a Claim for Breach of Contract

Plaintiffs have adequately pleaded the three elements of a breach of contract claim:  (1) "the parties entered into a valid contract," (2) "the defendant failed to perform his obligations under the contract," and (3) "the plaintiff sustained damages as a result."  *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div.

2007) (internal quotation and citation omitted).  Defendant challenges only that the CCAC fails to allege a contractual duty breached and fails to allege damages.

Under New Jersey law, damages are *presumed* from a breach of contract because a breach of contract is a legal invasion of a right "entitled to vindication" irrespective of whether a plaintiff has suffered actual damages.  *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 48 (1984).  Nonetheless, Plaintiffs here have expressly alleged contractual damages:  under their contracts with Horizon, they paid (or had paid on their behalves) premiums which were to cover costs associated with the protection of their PII/PHI.  ¶¶59, 111.  Horizon's failure to provide such protection means that Plaintiffs paid for something that they did not receive, and they are entitled to seek damages in the amount of their overpayments.

Contrary to Defendant's assertions, Plaintiffs have specified the contractual language that was breached.  Plaintiffs were required to provide their PII/PHI to Defendant upon enrollment.  ¶13.  In connection with a transaction, "a customer does not expect—and certainly does not intend—the merchant to allow unauthorized third-parties to access" the data provided.  *Anderson*, 659 F.3d at 159.  Thus, data protection was an implicit term in Plaintiffs' contracts with Horizon.  Further, Horizon made this implied term an explicit one by incorporating it into its Privacy Policy:  "We also maintain appropriate administrative, technical

and physical safeguards to reasonably protect your Private Information." ¶111. Thus, Plaintiffs have alleged the specific contractual term breached.

### c.    Plaintiffs State a Claim for Invasion of Privacy

The CCAC alleges invasion of privacy by an intrusion on seclusion, *not for* invasion of privacy by public disclosure of private facts.  The former "imposes liability on '[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'"  *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 588 (2009).  Moreover, the individual liable for the intrusion *need not* be the person who actually intrudes; to state a claim for intrusion on seclusion, it is enough to allege that the defendant's conduct caused the intrusion to occur.  *Id.* at 589-590.

To illustrate, in *Leang*, plaintiff stated a claim for intrusion on her seclusion where she was "taken to the hospital and subjected to examinations that would be highly offensive to an ordinary person."  *Id.* at 590.  In that case, the New Jersey Supreme Court found that plaintiff had stated a claim for intrusion against an individual who had not performed the examinations but rather had caused the intrusion to occur because the defendant would have been aware that his actions would result in the intrusion.  *See id.* at 590.[19]

---

[19] Plaintiff worked in a school; a teacher claimed to have heard her utter a threat

*Footnote continued on next page*

Defendant's failure to encrypt or otherwise safeguard Plaintiffs' PII/PHI caused the intrusion to happen, *i.e.*, it enabled an unknown individual to view Plaintiffs' PII/PHI, and the CCAC alleges that such an intrusion would be highly offensive to a reasonable person. ¶119. Thus, Plaintiffs' invasion of privacy claim withstands Defendant's motion.

### d.      Plaintiffs State a Claim for Unjust Enrichment

Plaintiffs state a claim for unjust enrichment because they allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Demaria v. Horizon Healthcare Servs., Inc.*, 2:11-CV-7298 WJM, 2013 WL 3938973, at *6 (D.N.J. July 31, 2013) (internal citation and quotation omitted). "In determining whether Plaintiffs have adequately stated a claim for unjust enrichment, the critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct." *Id.*

Plaintiffs satisfy the first prong because they allege that "Plaintiffs and Class Members paid or had paid on their behalf insurance premiums, amounting to

---

*Footnote continued from previous page*

and filed a report to that effect, resulting in her hospitalization and ensuing offensive examinations. *Leang*, 198 N.J. at 567, 589-590. Plaintiff claimed that the report was false and filed intentionally with the malicious intent that she would be subjected to the intrusion. *Id.* at 589-590.

thousands of dollars paid annually by or on behalf of each plan member." ¶111.[20] Thus, each Plaintiff and each Class Member conferred a benefit on Horizon.

Plaintiffs satisfy the second prong because they allege that they did not receive the data protection services (the challenged conduct) that Defendant should have provided (Plaintiffs' detriment), and Defendant received money from Plaintiffs (Defendant's benefit) to pay for such services. Because "the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct," it would be inequitable for Defendant to retain that benefit, satisfying the pleading requirements for a claim of unjust enrichment. *Demaria*, 2013 WL 3938973, at *6 (finding plaintiffs had "adequately pled their unjust enrichment claim" where "Horizon—through its failure to process claims and issue benefits in accordance with the terms of its Provider Agreements and Plans—retained funds it should otherwise have given to Plaintiffs, and was unjustly enriched in the process.").

Defendant's contention that Plaintiffs are not entitled to this claim because they received the health insurance contracted for is also misplaced. Def.'s Mem. 33-34. In each of the three cases relied upon by Defendant, plaintiffs alleged they had contracted for an item and received that item. In contrast, Plaintiffs here allege

---

[20] Because health insurance is part of an employee's total compensation, premiums paid on behalf of an employee are essentially paid by the employee.

they contracted for health insurance *and* protection of their PII/PHI data; however, they only received the former.  ¶¶111, 112.

Furthermore, construing health insurance and data protection as a single item does not bar Plaintiffs' unjust enrichment claim because the proper handling and protection of data is essential to the provision of health insurance, and this Court has allowed plaintiffs to proceed on unjust enrichment claims in such situations. *See, e.g.*, *Lynch v. Tropicana Products*, Civil Action No. 2:11-cv-07382 (DMC)(JAD), 2013 WL 2645050, at *10 (D.N.J. June 12, 2013) (unjust enrichment claim upheld where plaintiff purchased and received the product); *Paul v. Houlihan's Restaurants, Inc.,* CIV. 12-0025 JBS/JS, 2012 WL 6652754, at *7 (D.N.J. Dec. 20, 2012) (unjust enrichment claim upheld where plaintiff overpaid for drinks he received); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2008 WL 4126264, at *21 (D.N.J. Sept. 2, 2008) (unjust enrichment claim upheld where plaintiffs purchased a defective product marketed and sold for the price of a non-defective product).  Thus, Plaintiffs state a claim for unjust enrichment.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety.  Should the Court grant any part of Defendant's motion, Plaintiffs respectfully request leave to amend.  *See Foman v. Davis*, 371 U.S. 178, 182

(1962) (leave to amend shall be freely granted); *Bivings v. Wakefield*, 316 F. App'x

177, 180 (3d Cir. 2009) (same).

Respectfully submitted,

Dated:  September 22, 2014          **LITE DEPALMA GREENBERG, LLC**

By:   /s/   *Joseph J. DePalma*
        Joseph J. DePalma

Joseph J. DePalma
Two Gateway Center, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
Email: jdepalma@litedepalma.com

Laurence D. King (admitted *pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
Email: lking@kaplanfox.com

Philip A. Tortoreti
**WILENTZ, GOLDMAN & SPITZER P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ 07095-0958
Telephone:  (732) 636-8000
Email: ptortoreti@wilentz.com

Ben Barnow (admitted *pro hac vice*)
**BARNOW AND ASSOCIATES, P.C.**
One N. LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
Email: b.barnow@barnowlaw.com

*Plaintiffs' Interim Co-Lead Counsel*


Robert N. Kaplan (admitted *pro hac vice*)
David A. Straite
Lauren I. Dubick (admitted *pro hac vice*)
KAPLAN FOX & KILSHEIMER LLP
850 3rd Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
rkaplan@kaplanfox.com
dstraite@kaplanfox.com
ldubick@kaplanfox.com

Erich P. Schork (admitted *pro hac vice*)
**BARNOW AND ASSOCIATES, P.C.**
One N. LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504
Email: e.schork@barnowlaw.com

*Additional Plaintiffs' Counsel*