

**PHILIP A. TORTORETI, ESQ.**

T: 732.726.6221
F: 732.726.6542
ptortoreti@wilentz.com

90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958
732.636.8000

May 22, 2018

<u>**Via ECF**</u>

Honorable Mark Falk, USMJ
United States District Court
District of New Jersey
Frank R. Lautenberg US PO & Courthouse
1 Federal Square, Room 457
Newark, New Jersey 07102

   Re: *In re Horizon Healthcare Services, Inc. Data Breach Litigation*
      Civil Case No. 2:13-cv-07418 CCC-MF

Dear Judge Falk:

  On behalf of Plaintiffs in the above-captioned litigation, I write to request entry of an Order compelling Horizon to produce documents, identify and search the files of key employees, and amend certain of its responses to comply with the Federal Rules of Civil Procedure. I also request entry of an Order finding that by withholding documents and failing to provide a privilege log in violation of the Court's Order, Horizon waived the ability to withhold documents responsive to Plaintiffs' requests on grounds of privilege or work product protection. A proposed Order accompanies this letter. In the alternative, Plaintiffs respectfully request a conference to discuss these issues.

**WILENTZ**
Attorneys at Law

May 22, 2018
Page 2

## Summary of Issues in Dispute

Horizon's objections and responses to Plaintiffs' first set of requests for production of documents ("requests") were served almost one year ago.[1] Following oral argument last July on Horizon's motion to dismiss, Judge Cecchi ordered the parties to mediation and directed Horizon to produce the following three limited categories of documents, all of which were produced last August:

   a) A copy set of documents produced to the New Jersey Attorney General ("NJ AG") in a related investigation;

   b) A copy of the relevant cyber liability insurance policy; and

   c) A copy of the internal investigation report mandated by the NJ AG.

ECF No. 92. Discovery was otherwise stayed pending mediation. *Id.*

Mediation concluded without resolution. Horizon's production should have resumed on November 17, 2017, more than six months ago. Since that time, however, Horizon has only produced 21 documents. Horizon resists producing anything further based on numerous objections that, when considered in the aggregate, are designed for the sole purpose of artificially conforming its production here as much as possible to the NJ AG production.

Horizon's approach is inappropriate for a host of reasons. Most notably, Plaintiffs' primary claims in this case are made under the Fair Credit Reporting Act ("FCRA"); a statute not enforced by the NJ AG. The documents subpoenaed by the NJ AG cannot be a substitute for discovery in this case.

A good example of the deficiency of Horizon's approach is FCRA's prohibition on the disclosure of protected medical information to unauthorized recipients. Plaintiffs allege two violations of this prohibition: (1) an authorized Horizon employee disclosed approximately 839,000 individuals' names, dates of birth, Social Security numbers, addresses, medical histories, test and laboratory results, and other clinical information ("PII/PHI") to two unauthorized Horizon marketing employees (who stored the data on unsecured laptops); and (2) Horizon disclosed the PII/PHI when the

---

[1] A copy of Horizon's objections and responses to Plaintiffs' requests is attached as Exhibit A to the Declaration of Erich P. Schork, filed herewith.

#9918606.1



laptops were left out in the open over a long weekend during which it allowed 32 employees of an outside moving company and 266 other vendors or contractors access to the location where the laptops were stored. *See* Consolidated Class Action Compl. ("CAC") ¶¶ 76–102 [ECF No. 36]. During oral argument, Judge Cecchi noted both bases, and inquired into whether these actions can amount to a FCRA violation. Tr. at 33–34 (July 17, 2017) [ECF No. 100]. And yet to date, Horizon has refused to even identify the names of key employees, let alone produce any related documents.

Plaintiffs also assert claims under FCRA's provision mandating that certain companies maintain reasonable procedures designed to protect against PII/PHI falling into the wrong hands. Because the provision applies to companies ("CRAs") that share PII/PHI with third-parties for use in making decisions regarding an individual's eligibility for credit or insurance, the claim necessarily implicates documents related to whether and how Horizon provides PII/PHI to third parties—such as, for example, affiliated Blue Cross entities—when that PII/PHI might be used to determine whether to extend credit to a Horizon member.  CAC ¶¶ 79–84. And yet Horizon steadfastly refuses to produce any related documents.

As detailed in the Declarations of Erich P. Schork and David A. Straite filed herewith, Plaintiffs have attempted to resolve these disputes amicably but to no end. Court intervention is now necessary.  Plaintiffs request that the Court enter an Order:

1) compelling Horizon to complete its production in response to the requests by no later than July 15, 2018;

2) compelling Horizon to search the records of the two individuals assigned to the laptops stolen from Horizon's headquarters during the weekend of November 1–3, 2013, and produce responsive documents from such records;

3) compelling Horizon to produce documents sufficient to show the types of customer information Horizon was providing to third parties and obtaining from third-parties in the regular course of business as of November 2013; and

4) compelling Horizon to produce documents concerning Data Security Protocol training provided to Horizon's employees and contractors.

#9918606.1



May 22, 2018
Page 4

May 22, 2018
Page 4

Finally, Plaintiffs seek an Order finding that Horizon's failure to timely produce a privilege log in violation of the Federal Rules of Civil Procedure, Local Rules, and the Order of this Court, constitutes waiver of any right it may have had to withhold documents responsive to Plaintiffs' requests on the bases of privilege or work product protection and directing Horizon to produce any documents it has withheld on such grounds.

### Statement of Relevant Facts

On June 6, 2017, the Court directed Horizon to respond to Plaintiffs' requests on or before June 16, 2017, produce to Plaintiffs the documents Horizon produced to the New Jersey Attorney General ("NJ AG") and in the *Anthem* litigation, and to identify any documents withheld based on a claim of privilege on a privilege log. *See* Initial Scheduling Order [ECF No. 77].

On July 7, 2017, Horizon produced certain documents previously produced to the NJ AG or in the *Anthem* litigation. Straite Decl. ¶ 7. On July 13, 2017, counsel for the parties participated in a meet-and-confer conference regarding Horizon's general objections to Plaintiffs' requests and Horizon's specific objections to approximately the first half of the requests. Straite Decl. ¶ 9.

Following oral argument on July 17, 2017, and pursuant to Judge Cecchi's suggestion, the parties agreed to participate in mediation. In advance of the mediation, Judge Cecchi directed Horizon to produce the subpoena the NJ AG served on Horizon (the "NJ AG Subpoena"), Horizon's cyber-liability insurance policy, and the Security Report mandated by the Consent Decree between Horizon and the NJ AG. Horizon produced the subpoena and insurance policy on August 8, 2017, and the Security Report on August 17, 2017. Straite Decl. ¶ 10. The parties otherwise agreed to temporarily stay discovery, so they could focus their efforts on the mediation.

On September 28, 2017, counsel for the parties participated in a mediation before the Honorable Joel A. Pisano, U.S.D.J. (ret.). The mediation concluded without resolution.

On October 16, 2017, the parties jointly submitted a proposed scheduling order providing that Horizon was to produce documents responsive to Plaintiffs' initial document requests on a rolling basis beginning on November 17, 2017, and that Horizon's production was to be complete no later than March 19, 2018. ECF No. 99-



1. On November 21, 2017, Horizon produced 21 documents, consisting of certain organizational charts, job descriptions, and certain documents associated with one of Plaintiffs. Schork Decl. ¶ 6; Straite Decl. ¶ 11.

On November 27, 2017, counsel for the parties participated in a meet-and-confer conference regarding Horizon's objections to the second half of Plaintiffs' requests. Schork Decl. ¶ 5; Straite Decl. ¶ 9. During the call, Horizon's counsel represented that Horizon had not finished its production and that additional documents would be forthcoming. Schork Decl. ¶ 5; Straite Decl. ¶¶ 13, 14.

In mid-January 2018, one of Horizon's counsel contacted one of Plaintiffs' counsel requesting an extension of discovery deadlines. When questioned as to the rationale underlying the request, Horizon's counsel responded that he and his colleagues temporarily placed this litigation on the backburner and needed additional time to complete Horizon's production. *See* Straite Decl. Ex. C. Plaintiffs' counsel agreed to the request. The Third Discovery Scheduling Order, entered by the Court on February 7, 2018, reaffirms Horizon's obligation to produce documents responsive to the requests on a rolling basis in good faith and provides that Horizon's production must complete by May 31, 2018. ECF No. 102.

On April 9, 2018, having not received a single document in four months and only received 24 documents since July 2017, Plaintiffs' counsel sent a letter to Horizon's counsel requesting a meet-and-confer conference to discuss the matter. Straite Decl. ¶ 17, Ex. A. In response, Horizon's counsel took the position—for the first time—that their misconduct was attributable to the fact that they were awaiting a letter from Plaintiffs' counsel summarizing the parties' meet-and-confer discussions. Schork Decl. ¶ 8. Straite Decl. ¶ 18, Ex. B. Horizon's position is ridiculous. At no time prior to April 9, 2018, did Horizon's counsel ever inform Plaintiffs' counsel that Horizon's production was halted for any reason. Schork Decl. ¶ 9; Straite Decl. ¶ 19. On the contrary, during the discussions occurring in July and November of 2017 and late-January and early-February of 2018 Horizon's counsel repeatedly represented that more documents responsive to the requests were forthcoming. Schork Decl. ¶ 5; Straite Decl. ¶¶ 9, 14, Ex. C.

After exchanging additional letters, counsel for the parties participated in a meet-and-confer conference on May 3, 2018. Schork Decl. ¶ 10; Straite Decl. ¶ 21. During the call, Plaintiffs' counsel worked to attempt to convince Horizon to begin producing documents in good faith and to see if it were possible to reach an amicable



**WILENTZ**
Attorneys at Law

resolution as to certain outstanding discovery disputes. Schork Decl. ¶ 11. Throughout the call, Plaintiffs' counsel were forthcoming as to the rationale underlying Plaintiffs' views. Schork Decl. ¶ 11.

Horizon's counsel pursued a different approach. During the call, Horizon's counsel refused to provide any information as to what Horizon has done to move forward with its production since last July, to identify who (if anyone) Horizon has identified as custodians, to describe what searches (if any) have been performed, and to provide an estimate as to when Horizon intends to produce its next round of documents or what that production would entail. Schork Decl. ¶ 12; Straite Decl. ¶ 22. For example, in response to one of Plaintiffs' counsel's straightforward question as to whether Horizon has done anything to produce documents aside from those produced in the NJ AG action, Horizon's counsel would not even provide a yes or no answer. Schork Decl. ¶ 12. With respect to virtually every issue discussed, Horizon's counsel stated Horizon would "consider" its position and get back to Plaintiffs' counsel—a stalling tactic Plaintiffs' counsel have endured throughout this litigation. Schork Decl. ¶ 12.

Over two weeks have passed since the call. Horizon has not produced a single document in over six months and has only produced 24 documents in the past 10 months. Straite Decl. ¶ 13. Despite committing to provide Plaintiffs' counsel with responses as to numerous disputed issues within a few days of the May 3, 2018 meet-and-confer conference, Horizon's counsel failed to do so. Schork Decl. ¶ 14.

At this stage, several important disagreements exist regarding the adequacy of Horizon's responses to Plaintiffs' requests. In this letter, Plaintiffs move the Court for resolution of certain long-disputed issues where no daylight exists between the parties. While Plaintiffs remain invested in the meet-and-confer process as to other disputed items, it is possible (if not likely) that such issues will need to be brought the Court's attention for resolution in the near future.

### Argument

**I.  Horizon's Refusal to Produce Documents on a Rolling Basis in Good Faith**

Pursuant to the Court's February 7, 2018 Order, Horizon was required to produce documents responsive to Plaintiffs' requests on a rolling basis in good faith

#9918606.1



and to complete its production no later than May 31, 2018. ECF No. 102. It failed to do so.

Horizon admits its production is not complete, but has not produced a single document since November 21, 2017, and has only produced 24 documents in the past ten months. Straite Decl. ¶ 11. Aside from representing that Horizon will not be able to complete its production prior to the May 31, 2018 Court-ordered deadline, Horizon's counsel has refused to provide essentially any information as to the status of the production. Schork Decl. ¶ 12. Horizon's conduct is inexcusable.

Horizon's proffered excuse for its misconduct fails. On April 9, 2018, Horizon's counsel informed Plaintiffs' counsel for the first time that Horizon had halted its production. *See* Straite Decl. Ex. B. In that same letter, Horizon's counsel blamed Plaintiffs' counsel for their own clear misconduct, claiming they halted their client's production awaiting a letter summarizing the November 27, 2017 meet-and-confer conference. *See id.*

Horizon's newly stated position misstates key facts, is at odds with Horizon's obligation to search for and produce documents notwithstanding the parties' disputes, and in direct violation of the Court's Orders directing Horizon to produce documents on a rolling basis in good faith. During the July and November meet-and-confer conferences, Horizon's counsel represented that Horizon's production was not complete and more documents would be forthcoming. Schork Decl. ¶ 5; Straite Decl. ¶¶ 9, 14. In response to such assertions, one of Plaintiffs' counsel stated during the November call that after Plaintiffs' counsel is done reviewing Horizon's next production—documents Horizon has still not produced—he would draft a letter summarizing remaining disputes between the parties and proposing solutions. *See* Straite Decl. Ex. C. The statement was based on the view that a review of the forthcoming production could result in a narrowing of the issues in dispute or even resolve certain disputed issues.

In late-January 2018, one of Horizon's counsel contacted one of Plaintiffs' counsel and requested more time for Horizon to search for and complete its production of documents responsive to Plaintiffs' request. When asked why Horizon needed the extension, Horizon's counsel stated his client had put the case on the back burner and needed more time to complete its production. Straite Decl. Ex. C. At no time during these discussions did Horizon's counsel indicate Horizon had halted its production, much less that it did so because it was awaiting receipt of a letter from Plaintiffs'



counsel. *See id.* Horizon's attempt to blame Plaintiffs' counsel for its misconduct based on events that never happened is unbelievable on its face, has no merit, and should be rejected.

Horizon should be ordered to complete its production of documents responsive to Plaintiffs' requests no later than July 15, 2018.

## II.   Documents from the Individuals Whose Laptops Were Stolen

This case stems from the theft of two unsecured laptops (the "Stolen Laptops") from Horizon's Newark headquarters during the weekend of November 1–3, 2013. CAC ¶¶ 32–36. The Stolen Laptops contained PII/PHI relating to approximately 839,000 individuals and were assigned to two individuals in Horizon's marketing department—employees not required to store PII/PHI on their laptops to perform their job functions.

Any search for documents responsive to Plaintiffs' requests should have begun by searching the records of the two Horizon employees the Stolen Laptops were assigned to. Documents from these individuals are relevant, discoverable, and responsive to several of Plaintiffs' requests. *See, e.g.,* Schork Decl. Ex. A: Request 10 (requesting that Horizon product "All documents related to the November 2013 Security Incident, including any investigations or audits related thereto, and including specifically documents provided to or received from Navigant Consulting, Inc.").

Horizon has refused to commit to producing documents from these important individuals. Horizon's position is indefensible. These individuals should be identified as custodians, their records should be searched, and responsive documents and information from their records should be produced.

## III.   Documents Sufficient to Show the Types of Customer Information Horizon Provided to Third Parties and Received from Third Parties in the Normal Course of Business

Plaintiffs' Requests 32 and 33 collectively seek documents sufficient to show the type of Customer Information Horizon provided to third parties in the ordinary course of business (including forms and other standardized documents used to transmit PII or PHI to third parties), and documents sufficient to show the types and extent of information Horizon obtained from third parties in the ordinary course of

#9918606.1


business related to its insureds. These requested documents are clearly relevant to Horizon's status as a Consumer Reporting Agency as defined by the Fair Credit Reporting Act.

During the parties' meet-and-confer conferences, Plaintiffs' counsel repeatedly identified these documents as a priority. Over 11 months ago, Horizon stated it would produce documents responsive to these requests from between January 1, 2012 to June 27, 2014. *See* Schork Decl., Ex A. To date, however, Horizon has not produced a single responsive document to these requests. Horizon's obfuscation is inexcusable.[2] The requested documents should be produced without delay. The withholding is obviously designed to shore up Horizon's denial of its liability under the FCRA and prevent Plaintiffs' advancing their FCRA cause of action.

### IV. Documents Concerning Training Regarding Data Security Protocols Provided to Horizon's Employees and Contractors

Requests 23 and 24 collectively seek the production of documents concerning Data Security Protocol training provided to Horizon's employees and contractors. The requested documents pertain to several issues in this litigation, including whether Horizon maintained reasonable security procedures to prevent the unauthorized disclosure of its insureds' PII/PHI, whether Horizon failed to exercise reasonable care in protecting its insureds' PII/PHI, and whether Horizon's repeated failures to protect its insureds' PII/PHI constitute an unfair practice in violation of New Jersey's Consumer Fraud Act.

In responding to these requests, Horizon stated it would produce responsive documents to the extent such documents were produced to the NJ AG. *See* Schork Decl. Ex. A. But as Horizon well knows, the NJ AG Subpoena did not specifically request training materials. Horizon's response is misleading and inappropriate. The requested documents are relevant, discoverable, and should be produced.

---

[2] Requests 32 and 33 seek documents created from January 1, 2008 to present. During the May 3, 2018 meet-and-confer conference, in response to Horizon's counsel's questioning as to date ranges, one of Plaintiffs' counsel conveyed that the requests seek a full picture of all data Horizon was sharing with and receiving from third parties as of November 2013. Counsel went on to state that because information sharing practices are sometimes not frequently updated, it is conceivable documents created prior to January 1, 2012 may be needed to provide that full picture, but if Horizon can confirm in writing that the documents Horizon already agreed to produce (created between January 1, 2012 and June 27, 2014) are sufficient to provide that full picture, nothing else is needed.



### V. Horizon's Practice of Limiting Responses to What Was Produced in the NJ AG Action Violates Federal Rules

Rule 34(b) of the Federal Rules of Civil Procedure is designed to facilitate open, straightforward responses as to what a party will be and will not be producing in response to requests for production of documents. *See* Fed. R. Civ. P. 34(b)(2)(B) ("*Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."); Fed. R. Civ. P. 34(b)(2)(C) ("*Objections.* An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.").

Rather than responding openly and specifically as required, Horizon responded to Plaintiffs' requests 7–12, 15, 23, 24, 29, 35, and 39 by asserting Horizon would be producing responsive documents to the extent produced to the NJ AG.

Horizon's tactics violate the Federal Rules. The NJ AG action involved different claims, different parties, different counsel, and a subpoena for documents that does not substantially overlap with Plaintiffs' requests for documents. Certain of the concerned requests (for example, requests 23, 24, and 35) seek documents that were not even subpoenaed by the NJ AG. As the Court well knowns, requests are often limited pursuant to agreements between counsel—discussions Plaintiffs' counsel were not party to. Moreover, as Horizon's conduct in this matter demonstrates, the fact that documents were subpoenaed from Horizon does not indicate all documents requested were produced. On the contrary, Horizon's failure to produce documents from the two employees the Stolen Laptops were assigned to evidences that Horizon almost certainly did not produce all documents responsive to the NJ AG Subpoena.

Horizon should be required to supplement its responses to Plaintiffs' requests 7–12, 15, 23, 24, 29, 35, and 39, to identify all documents responsive to these requests Horizon has produced or will be producing and to state with specificity the grounds for each of its objections and whether responsive materials have been withheld on the basis of that objection.

### VI. In Failing to Produce a Privilege Log in Violation of the Court's Order, Horizon Waived Its Ability to Withhold Documents on the Basis of Privilege or Work Product Protection

Preparing and submitting a privilege log is mandatory under the Federal Rules of Civil Procedure:

> (A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A); *see also* L. Civ. R. 34.1. "The submission of a privilege log is important because it allows opposing counsel and, if necessary, the court to determine the basis of the claim . . . [thus] [w]ithout such a log, that part of the review process cannot begin." *United States Spletzer v. Allied Wire & Cable, Inc.*, No. CV 09-4744, 2015 WL 7014620, at *4 (E.D. Pa. Nov. 12, 2015). Nearly a year ago, the Court expressly directed Horizon to identify any documents withheld on the basis of privilege on a privilege log. *See* Order [Doc. 77].

Horizon admits it is withholding documents. Schork Decl. ¶ 13. Yet, in what appears to be a tactical decision, Horizon has not provided a privilege log with respect to even a single document. *See id.* After the November 2013 Security Incident, Horizon brought in Navigant Consulting, Inc. ("Navigant")—a third-party forensics firm—to investigate the incident. Plaintiffs' Request 10 specifically requests, among other things, documents provided to or received from Navigant. *See* Schork Decl. Ex. A. Although Horizon's counsel has confirmed Horizon is withholding certain Navigant documents and communications on grounds of privilege or work product protection, they have provided no information regarding the documents being withheld or Horizon's specific rationale for doing so.

Horizon has had more than ample opportunity to provide a privilege log in compliance with Federal Rules and the Court's directive. In failing to do so, it waived any right it may have had to withhold documents responsive to Plaintiffs' requests on the basis of privilege or work product protection. *See, e.g., Wachtel v. Health Net,*

#9918606.1



*Inc.*, 239 F.R.D. 81, 106–107 (D.N.J. 2006) (striking untimely privilege logs and requiring that all documents identified on the logs be produced); *Get-A-Grip, II, Inc. v. Hornell Brewing Co.*, No. CIV A. 99-1332, 2000 WL 1201385, at *3 (E.D. Pa. Aug. 8, 2000) (finding waiver of privilege by party where the log was 2 months late and directing that the party produce all documents identified on the log). Such waivers are needed to stop these sharp tactics.

## Conclusion

For the reasons stated herein, Plaintiffs respectfully request that this Honorable Court enter an Order:

1) Compelling Horizon to complete its production of documents responsive to Plaintiffs' requests no later than July 15, 2018;

2) Compelling Horizon to identify as custodians the two individuals assigned to the laptops stolen from Horizon's headquarters during the weekend of November 1–3, 2013, search these individuals' records for documents responsive to Plaintiffs' requests, and produce to Plaintiffs' counsel documents from these individuals' records responsive to Plaintiffs' requests;

3) Compelling Horizon to produce documents responsive to Plaintiffs' requests 23, 24, 32 and 33;

4) Declaring Horizon's practice of responding to requests for production by stating that it would produce documents to the extent produced to the NJ AG to be in violation of the Federal Rules of Civil Procedure and directing Horizon to amend its responses to requests 7–12, 15, 23, 24, 29, 35, and 39 to comply with the Federal Rules of Civil Procedure;

5) Declaring that in failing to provide Plaintiffs' counsel with a privilege log in violation of the Court's Order, the Federal Rules of Civil Procedure, and Local Rules, Horizon waived the right to withhold documents responsive to the requests based on privilege or work product protection and directing Horizon to produce to Plaintiffs' counsel all documents previously withheld by Horizon on grounds of privilege or work product protection; and



May 22, 2018
Page 13

6) Entering any such other relief as the Court deems just and appropriate.

Respectfully submitted,

/s/ Philip A. Tortoreti

#9918606.1



## CERTIFICATION OF FILING AND SERVICE

I hereby certify that on the 22nd day of May 2018, a copy of a *letter to the Honorable Mark Falk, USMJ, Declaration of Erich P. Schork with Exhibits, Declaration of David A. Straite with Exhibits, and a Proposed Form of Order* was filed via Electronic Case Filing. Notice of this filing will be sent to all parties via the Court's Electronic Case Filing System.

/s/ Philip A. Tortoreti

#3951213.1(154173.002)